[Civ. No. 8443.   Fourth Dist., Div. One.   July 14, 1967.]

CITY OF SAN DIEGO, Cross-complainant and Respondent, v. ATLAS HOTELS, INC., Cross-defendant and Appellant.

Clifford L. Duke, Jr., for Cross-defendant and Appellant.

Edward T. Butler, City Attorney, and Brian J. Newman-Crawford, Deputy City Attorney, for Cross-complainant and Respondent.

BROWN (Gerald), P. J.—Atlas Hotels, Inc. appeals from a judgment enforcing the City of San Diego's 4 percent transient room tax (San Diego City Ordinance No. 9033 [New Series]). The ordinance requires all room tax revenues be used solely for promoting the City of San Diego, and allocates all room tax revenue to the San Diego Convention and Tourist Bureau.

The stipulated question is whether the transient room tax is a "special tax" within section 76 of the Charter of the City of San Diego, and, therefore, invalid. Precisely, the question is whether "special tax" in section 76 means, as Atlas Hotels contends, any tax the revenue of which is allocated to a special purpose, or, as the City of San Diego contends, an ad valorem property tax the revenue of which is allocated to a special purpose.

Section 75 of the Charter of the City of San Diego, entitled "Annual Tax Levy," directs the City Council to adopt annually an ordinance levying a rate of taxation upon the assessed valuation of all property within the City, to raise the budget's estimated required revenue. Section 76, entitled "Limit of Tax Levy," initially limits the levy authorized in section 75 to $1.34 on each $100 of assessed valuation. In addition, section 76 authorizes the City Council to levy *ad valorem* property taxes to meet certain pension fund requirements. Section 76's next direction provides: "No special tax shall be permitted except as expressly authorized by this Charter."

The term "special tax" in section 76, Atlas Hotels argues, has a plain, obvious meaning; any tax the revenue of which is allocated to a special purpose. The argument continues: "spe-

cial tax'' does not mean special property tax because it does not say so. This argument ignores the context in which the partial prohibition against special taxes appears. Following section 75's direction to levy an annual *ad valorem* property tax to meet municipal expenses, section 76 imposes a maxium rate of taxation to which property may be subjected for this purpose. Section 76 authorizes an *ad valorem* property tax for a special pension purpose. In this section which defines limitations on the power to levy *ad valorem* property taxes, the partial prohibition against ''special taxes'' must mean ad valorem property taxes with a special purpose, a purpose other than to meet municipal expenses.

Atlas Hotels contends the concept of ''special tax'' as an *ad valorem* property tax renders meaningless the prohibition against special taxes. Atlas Hotels argues the $1.34 on each $100 assessed valuation limitation limits all *ad valorem* property taxation, excluding special taxes authorized by the Charter. This argument ignores the difference between limitation and prohibition, and the special purpose aspect of special taxes, which special purpose may exclude them from the $1.34 limitation imposed upon *ad valorem* property taxation to meet municipal expenses.

*City of Glendale* v. *Trondsen,* 48 Cal.2d 93 [308 P.2d 1], is instructive. Our Supreme Court determined a Glendale ordinance imposing a rubbish collection tax was not invalidated by a ''special tax'' provision in a section of the Glendale Charter limiting the levy of *ad valorem* property taxation. The Charter section set a maximum limit on the rate of *ad valorem* property taxation, excluding ''special taxes.'' The court held ''special tax'' in the Glendale Charter means a property tax. In the Glendale and San Diego Charters, special taxes are authorized or prohibited within the framework of *ad valorem* property taxation limitations. In each Charter, as the *Trondsen* case held with respect to the Glendale Charter, special tax, therefore, can only mean property tax. *Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619 [191 P.2d 426], upon which Atlas Hotels relies, and in which our Supreme Court determined the inapplicability of referendum provisions in the Charter of the City of Riverside to a license tax, and expressly refused to determine whether the Riverside license tax is a special tax, is not instructive.

Atlas Hotels contends review of San Diego's Charter history proves ''special tax'' is not limited in meaning to *ad valorem* property taxation. Atlas Hotels points out the term

first appeared in the 1905 amendments to article VI, chapter 1, section 2 of the 1889 charter. As amended in 1905, section 2 authorized an annual levy on real and personal property not to exceed in any year 90 cents for each $100 assessed valuation, except for, *inter alia*, special taxes voted by the people. Atlas Hotels concludes special taxation in 1905 meant a type of taxation without reference to source, the revenue of which is allocated to a special purpose. Section 2 as amended in 1905, however, strikingly like the limitation provision in the Glendale Charter, and like section 76 today, dealt with limitations on *ad valorem* property taxation, and, in that context, special tax means a special purpose *ad valorem* property tax. Atlas Hotels' other charter history arguments similarly fail to overcome the basic fact the term ''special tax'' when used in a section limiting *ad valorem* property taxation, means an *ad valorem* property tax.

The term ''special tax'' appears twice in section 76. In addition to the partial prohibition, section 76 limits the City's indebtedness for public improvements to 25 percent of assessed valuation of real and personal property. Section 76 continues: ''This limitation on the part of the City to incur indebtedness shall be construed to include any indebtedness which may be incurred by special taxes or by the voting of bonds by the electors.'' Atlas Hotels contends the public improvement limitation inclusion of ''special taxes'' proves ''special taxes'' includes non-*ad valorem*, non-property special-purpose taxes. Atlas Hotels argues: 1) Cal. Const., art. XI, § 18 prohibits the City from incurring indebtedness in any year exceeding income and revenue for such year, unless: (a) The City imposes an annual tax to pay interest as due and principal on maturity, and (b) two-thirds electors approve. 2) The special fund doctrine, an exception to the constitutional indebtedness limitation, permits bonds and obligations payable from special funds if the City is not liable to maintain the special fund out of its general fund, or by tax levies, should the special fund prove insufficient. 3) The constitutional indebtedness limitation includes property and non-property taxes.

From this, Atlas Hotels concludes section 76, by including special taxes in the public improvement limitation, evidences an intention to prevent diversion of general fund revenues through the special fund doctrine. The conclusion neither follows nor is convincing. Rather than construe section 76's *ad valorem* property taxation limitation as prohibiting use of a

doctrine which does not affect property taxation, the limitation should be construed as consistently using the term "special tax" as an *ad valorem* special-purpose property tax.

Judgment affirmed.

Coughlin, J., and Whelan, J., concurred.