[Civ. No. 16731. Fourth Dist., Div. One. Mar. 28, 1979.]

UNITED BUSINESS COMMISSION et al., Plaintiffs and Appellants, v. CITY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Robert M. Aran for Plaintiffs and Appellants.

John W. Witt, City Attorney, and C. Alan Sumption, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**WIENER, J.**—United Business Commission and D.H.E. Enterprises, Inc., appeal from a declaratory judgment which held the City of San Diego's (City) on-premises sign ordinance (Ord. No. 11718 [new series] and its amendments) constitutional. For the reasons which we will discuss, we have concluded the ordinance, including the imposition of reasonable sign inventory fees, is a valid exercise of the city's police power. The sign inventory fee is a regulatory license fee which does not violate the constitutional right of freedom of speech and does not deny to owners or users equal protection of the laws. The provisions of the ordinance are clear and reasonably certain in nature, affording substantive due process to those persons affected. We also conclude the amortization scheme for nonconforming signs to be reasonable on its face, as well as in its application to the property of D.H.E. Enterprises, Inc. We affirm the judgment.

*Factual and Procedural Background*

On March 6, 1973, the San Diego City Council enacted a comprehensive "on-premises" sign ordinance, regulating the "on-premises" signs in the commercial and industrial zones within the City (Ord. No. 11000 [new series]). The declared purpose of the law was as follows: "This ordinance establishes the legal framework for a comprehensive system for the regulation of on-premises signs. It presents a set of reasonable, non-arbitrary, and non-discriminatory standards and controls, which are designed to optimize communication between the citizen and his environment, to facilitate the protection not only of the public, but the

aesthetic character of the City, and to ensure the availability to the business community of adequate quality on-premises signs." (San Diego Mun. Code, § 101.1100, subd. (B).)[1] It was amended in a few respects on May 17, 1973 and October 25, 1973, by Ordinances Nos. 11064 and 11150, respectively. Ordinance No. 11000 as amended established requirements for the nature and structure of signs on business premises, the payment of building permit fees, a biennial "existing sign use" fee and for the abatement of nonconforming signs in two years subject to an extension upon appeal of an additional five years.

Shortly after the enactment of the ordinance, the city started an inspection and inventory of all on-premises signs in San Diego in order to enforce and administer the comprehensive sign ordinance, including the billing of the "existing sign use" fee. Plaintiff D.H.E. Enterprises, Inc. is one of those billed. Plaintiff United Business Commission is a nonprofit corporation and a potential sign user. On August 14, 1974, they filed a complaint for injunctive and declaratory relief, seeking to have Ordinance No. 11000 as amended, declared unconstitutional in whole or in part. A preliminary injunction was granted on September 20, 1974, enjoining the City "from collecting the disputed sign fees until trial court resolves the matter."

On November 12, 1975, the city council adopted Ordinance No. 11718 which amended by repealing certain sections of Ordinance No. 11000 (as amended) while reenacting the majority of the sections in the original ordinance. Ordinance No. 11718 established a new fee structure for both building permits and fees for signs existing as of the effective date of Ordinance No. 11000 (Apr. 5, 1973). It also provided for an amortization scheme which permitted signs in existence in 1973 to be in continued use until March 1, 1980, before conformance or removal, subject to a three-year extension upon appeal. Signs erected under Ordinance No. 11000 were not required to conform to the later regulatory revisions.

The new fee structure was based upon the City's 1974 study of the actual and estimated costs of issuing new building permits and the inspection and inventory of existing signs. The express purpose of the workup was to make the fee provisions reflect the direct costs of regulation and administration, as the study set off contributory funds from federal programs. Ordinance No. 11718 provided for a refund, which was in fact paid, to those sign users who had already paid fees under amended Ordinance No. 11000 which were greater than the newly

---

[1]All references are to the San Diego Municipal Code unless otherwise specified.

designated fees. As to existing signs, the new fee was denominated a "one-time sign inventory fee" which replaced the biennial existing sign use fee of Ordinance No. 11000. Sign users were thus billed under Ordinance No. 11718.

On May 28, 1976, a supplemental complaint was filed alleging the invalidity of the new ordinance and specifically challenging the inventory fee on existing signs. During trial, by stipulation, the invalidity of the provisions of Ordinance No. 11718 relating to abatement and the termination of nonconforming signs was tried. The trial court declared Ordinance No. 11718, as amended, to be constitutional in all respects challenged.

*Ordinance No. 11718 and the Sign Inventory Fee Constitute Valid Exercises of Police Power and Are Regulatory in Nature*

Plaintiffs initially contend the City's use of its police power in imposing a tax for revenue labeled as a "sign inventory fee" is unconstitutional. They also urge that since such a tax or revenue-bearing measure must be expressly provided for by the city charter and because charter sections 75 and 76 relating to annual tax and limit of tax levy fail to provide for such a tax, it is unauthorized and thus improper.

■ Pursuant to article XI, section 3, subdivision (c) of the California Constitution the City has elected to be a charter city with the responsibility of providing for its own government through the adoption of a charter. Concerning the content of the charter, article XI, section 5, subdivision (a) of the California Constitution provides in pertinent part: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." Further, article XI, section 7 expressly confers on cities the power to "make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws." "The power thus delegated to municipalities is as broad as that of the Legislature itself, providing the power is exercised within the confines of the city and is not in conflict with the state's general laws." (*Carlin v. City of Palm Springs* (1971) 14 Cal.App.3d 706, 711 [92 Cal.Rptr. 535].)

■ "[T]he reasonable regulation of signs and billboards constitutes a valid exercise of police power." (*Carlin v. City of Palm Springs, supra,* at

p. 712; see also *Metromedia, Inc.* v. *City of Pasadena* (1963) 216 Cal.App.2d 270, 273-274 [30 Cal.Rptr. 731]; *National Advertising Co.* v. *County of Monterey* (1962) 211 Cal.App.2d 375, 378 [27 Cal.Rptr. 136], disapproved on other grounds in *Metromedia, Inc.* v. *City of San Diego* (Cal.).) However, plaintiffs contest the propriety of the City's use of its police power in the imposition of a tax for revenue, labeled as an inventory fee. ■ It is settled that a municipality under the police power may impose a license fee for the purpose of regulation, not revenue, where the fee constitutes an amount necessary to "legitimately assist in regulation and . . . not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the . . . subject that it covers." (9 McQuillin, Municipal Corporations (3d ed. rev.) § 26.15, p. 29; see *County of Plumas* v. *Wheeler* (1906) 149 Cal. 758, 763 [87 P. 909]; *Redwood Theatres* v. *City of Modesto* (1948) 86 Cal.App.2d 907, 919 [196 P.2d 119].)

■ The determination of whether the actual purpose of an ordinance is regulatory or revenue-raising in nature is a question of fact. (*City & County of San Francisco* v. *Boss* (1948) 83 Cal.App.2d 445, 450 [189 P.2d 32]; *Davis* v. *City of San Diego* (1939) 33 Cal.App.2d 190, 192 [91 P.2d 640].) In its determination, the court. will look to the substantive provisions of the ordinance and not merely its title and form. (*Oakland Raiders* v. *City of Berkeley* (1976) 65 Cal.App.3d 623, 627 [137 Cal.Rptr. 648]; *Arnke* v. *City of Berkeley* (1960) 185 Cal.App.2d 842, 847 [8 Cal.Rptr. 645].) " 'If revenue is the primary purpose and regulation is merely incidental the imposition is a tax; while if regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax . . .' [Citations.] . . : 'In general, therefore, where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax.' " (*City & County of San Francisco* v. *Boss, supra,* 83 Cal.App.2d at pp. 450-451.)

The general rule is that a regulatory license or permit fee levied cannot exceed the sum reasonably necessary to cover the costs of the regulatory purpose sought. Such costs, however, include all those incident to the issuance of the license or permit, investigation, inspection, administration, maintenance of a system of supervision and enforcement. (*County of Plumas* v. *Wheeler, supra,* 149 Cal. at pp. 763, 766; 9 McQuillin,

Municipal Corporations (3d ed. rev.) § 26.36, p. 77.) The Supreme Court in *County of Plumas* v. *Wheeler, supra,* 149 Cal. at page 764, explained: "It is not to be understood from these citations that the costs to the municipality which may be considered are simply those which arise directly in the enforcement of the regulatory provisions themselves. The license fee may properly be fixed with a view to reimbursing the city, town, or county for all expense imposed upon it by the business sought to be regulated. 'In fixing upon the fee, it is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed.' "[2] Finally, the municipality need only apply sound judgment and consider "probabilities according to the best honest viewpoint of informed officials" in determining the amount of the regulatory fee. (*Watson* v. *County of Merced* (1969) 274 Cal.App.2d 263, 268 [78 Cal.Rptr. 807].)

When we apply the foregoing principles to Ordinance No. 11718 and the inventory fee in controversy, we conclude the ordinance and its fee provisions are regulatory in nature and not enacted for the purpose of raising revenue. There is ample evidence to support the trial court's conclusion of the regulatory nature of the enactment and fee. The evidentiary record relating to the historical background leading to the adoption of Ordinance No. 11718 and the inventory fee clearly supports this conclusion. Further, a city manager report to the mayor and city council dated after the adoption of Ordinance No. 11718 reflects the regulatory intent behind the fee. The report reads: "In November 1975 Council adopted amendments to the on-premises sign regulations which included provisions for a one-time, existing sign inventory fee. This fee was designed to recover, as nearly as possible, the City's direct cost of inventorying and bringing into conformance on-premises signs existing as of April 5, 1973." In addition, the report summarized the results of the sign inventory fee, noting the cost to the City was $262,441 and the total fees invoiced was $220,846, leaving a deficit of $41,595.[3] The record includes evidence that the expenses involved reasonably related to the

---

[2] Consequently, plaintiffs' complaint in regard to the City's inclusion of the following items in determining its total cost for the sign inventory is without merit; the inspection of hazards, travel time, office supplies, telephone expenses, overhead, clerk's time, etc.

We note further it is unnecessary for section 95.0107(C) to make reference to the "constituent" cost elements of the inventory fee, as plaintiffs suggest. Their suggestion is without support of legal precedent and is clearly impractical in character.

[3] The city expenses included all those relevant expenses incurred in the building inspection department ($173,624), planning department ($5,251), data processing department ($74,712), auditor-comptroller department ($6,854) and the city attorney's office ($2,000).

regulatory goal involved—the inventory process constituted much more than a mere counting, but a thorough procedure of inspection, inventory, administration and enforcement.

The fee schedule set out in section 95.0107,[4] Ordinance No. 11718 establishes a graded fee structure for both building permit and one-time sign inventory fees. ■ Plaintiffs challenge the latter fee grading as unreasonable since it takes no longer to count a 100-foot sign than a 10-foot sign. They fail to consider, however, the basic fact that the inventory process involved far more than the mere counting of signs. (*Supra.*) After a review of the ordinance in question and the record, the term "inventory fee" is an unfortunate misnomer, as "inspection fee" would be a more appropriate term. The field study and cost analysis of the inventory process used to determine the graded fee schedule seems valid in nature, as it took into consideration the actual cost involved in the inventory and the varying amounts of time required in the field to

---

[1]Section 95.0107 provides in pertinent part:

"A. GENERAL

The fees prescribed in this division must be paid to The City of San Diego for each sign installation for which a permit is required by this division and must be paid before any such permit is issued, as herein provided.

"B. BUILDING PERMIT FEE

Fees for Building permits including the Initial Maintenance Certification Stickers, for each sign erected, installed, affixed, structurally or electrically altered, relocated, or created by painting shall be set in accordance with the following schedule:

BUILDING PERMIT FEES

| Sign Type | Less Than 50 s.f. | 50-99 s.f. | 100 s.f. or More |
|---|---|---|---|
| Wall, nonelectric | $28.65 | $31.65 | $34.65 |
| Wall, electric | $34.65 | $37.65 | $40.65 |
| Ground, Roof, and Projecting | $52.65 | $55.65 | $58.65 |
| Special,* small electric Wall | $12.00 | — | — |
| Special,* small electric Ground | $18.00 | — | — |

*Not regulated in Chapt. X, Art. 1, Div. 10, Municipal Code

The fees prescribed in Section 95.0107 B, except for $10.00, may be refunded in the event that no portion of any work authorized by the Permit has been performed and provided that no inspections have been made. Such refund may be authorized by the Building Official upon application by the permittee within 90 days from the date of permit issuance. Prior to authorization of any refund under the provisions of this section, the Building Official shall require that the permittee's copy of the issued permit as well as the Sign Permit sticker are returned to the Building Inspection Department.

"C. SIGN INVENTORY FEE

1. A one-time Sign Inventory Fee as specified in the following schedule shall be due and payable to The City of San Diego on the effective date of this Ordinance, for each legally installed sign existing on April 5, 1973.

SIGN INVENTORY FEES FOR EXISTING SIGNS

| Sign Type | Less Than 50 s.f. | 50-99 s.f. | 100 s.f. or More |
|---|---|---|---|
| Wall, nonelectric | $ 5.60 | $ 7.25 | $ 8.85 |
| Wall, electric | $ 8.85 | $10.45 | $12.10 |
| Ground, Roof, Projecting nonelectric | $ 7.25 | $ 8.85 | $10.45 |
| Ground, Roof, Projecting electric | $10.45 | $12.10 | $13.70" |

inventory the different types of signs. For example, empirical data from the field established that electrical signs took a proportionate longer period of time to inspect than painted signs, due to the mechanical nature of the former. Ground, roof and projecting signs took a proportionate longer period of time to inventory than wall signs, due to access difficulties. The greater the square footage of a sign, the longer it took to inspect. We find the graded fee schedule to be reasonable in character, successfully reflecting the proportionate inventory cost to the city of the inspection of each sign predicated upon its type. (See *Baldwin* v. *Redwood City* (9th Cir. 1976) 540 F.2d 1360, 1371.)

Plaintiffs argue, however, that since the sign inventory was completed before the adoption of Ordinance No. 11718, "the imposition of a sign inventory fee for recoupment of expenses incurred under a repealed and prior law (Ord. No. 11000 as amended), which called for no such fee, can only be seen as a revenue tax measure." This argument fails, because the premises it relies upon are faulty. First, the record establishes that although the majority of the inventory process, which involved substantial administration as well as field inspection, was done under Ordinance No. 11000, it was not completed until January 1, 1976, following the adoption of Ordinance No. 11718 and that in excess of $29,000 was expended on the project after the adoption of Ordinance No. 11718. Secondly, as will be discussed in detail later, Ordinance No. 11718 constitutes a continuation and reenactment of Ordinance No. 11000 as amended.

The contention is also made that since Ordinance No. 12041 (new series) was adopted on March 16, 1977, exempting buildings or structures used exclusively for religious purposes from the sign inventory fee, there is created a presumption Ordinance No. 11718 is a revenue-bearing measure. This contention is equally without merit as the testimony of Chief Deputy City Attorney Frederick Conrad establishes the climate within which the city council adopted Ordinance No. 12041; to wit, the latter being aware that the inventory fee was regulatory in nature, not a tax, and that it was not compelled to grant an exemption, although it surely could.

Since we have concluded the inventory fee in controversy constitutes a regulatory fee and not a revenue-raising tax, it is unnecessary to address plaintiffs' contention the license fee in question is improper since not expressly authorized in the city charter. ■ We note, however, the law is clearly to the contrary. "The levy and collection of taxes by a city

having a charter under our Constitution is a municipal affair. The power is broad, being limited only by the charter and the Constitution. [Citation.] It is said in *Ainsworth* v. *Bryant,* 34 Cal.2d 465, 469 . . . : 'It is well settled that the power of a municipal corporation operating under a freeholders' charter . . . . to impose taxes "for revenue purposes, including license taxes, is strictly a municipal affair." pursuant to the direct constitutional grant of the people of the state [citations], and that *"the restrictions* on the exercise of that power *are only the limitations and restrictions appearing in the Constitution and in the charter itself." . . . The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs* which the city is assumed to possess; and *the enumeration of power does not constitute an exclusion or limitation." (City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 98 [308 P.2d 1]; see also *West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 521-526 [95 P.2d 138].) Consequently, it is not necessary for the charter to confer specific authority for the inventory fee in controversy. *(City of Glendale* v. *Trondsen, supra,* at p. 99.)[5]

*Ordinance No. 11718 Is a Revision, Substantial Reenactment and Continuation of Ordinance No. 11000 as Amended.*

■ Plaintiffs assert the unconstitutionality of the inventory fee provisions can be grounded upon the theory that the sign inventory fee structure of Ordinance No. 11718 is an improper attempt to recover retroactively expenditures made under Ordinance No. 11000 as amended, which was expressly repealed by Ordinance No. 11718. We conclude Ordinance No. 11718 constitutes a substantial reenactment and continuation of Ordinance No. 11000 and thus find this assertion to be without merit. Consequently, it is unnecessary for us to review the issue relating to the retroactive application of the inventory fee.

---

[5]Plaintiffs' reliance on charter sections 75 and 76 is misplaced as the sections are not applicable to the fee at bar. Section 75, entitled "Annual Tax Levy" directs the city council to adopt annually an ordinance levying a rate of taxation upon the assessed value of all property within the City in order to raise the budget's estimated required revenue. The section is concerned with the property tax, as its language contemplates other sources of revenue by providing the amount estimated to be required in the annual budget be the difference between estimated need "less the amounts estimated to be received from fines, licenses, and other sources of revenue." Section 76, entitled "Limit of Tax Levy" constitutes a limitation upon the property tax levy, setting the maximum rate for assessed property valuation. The section further provides: "No special tax shall be permitted except as expressly authorized by this Charter." We have previously held that the special tax referred to in section 76 constitutes an ad valorem property tax, the revenue of which is allocated to a special purpose. *(City of San Diego* v. *Atlas Hotels, Inc.* (1967) 252 Cal.App.2d 591, 592-595 [60 Cal.Rptr. 644].)

■ The Supreme Court in *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260], aptly pointed out as follows: " ' "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citations.] Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose.' [Citations.] . . . 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " Therefore, Ordinance No. 11718 must be construed in light of its historical background and evident objective. (*Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786, 791 [36 Cal.Rptr. 150]; *H. S. Mann Corp.* v. *Moody* (1956) 144 Cal.App.2d 310, 320 [301 P.2d 28].)

■ A review of the record and exhibits before us relating to the city council's intent behind its enactment of Ordinances Nos. 11000 and 11718 establishes that the city council intended that Ordinance No. 11718 would be a revision, continuation and substantial reenactment of Ordinance No. 11000. First, a comparative examination of both ordinances indicates that the basic characteristics of the San Diego on-premises sign ordinance and its general underlying philosophy were unchanged by the adoption of the later ordinance, which in essence mostly consisted of editorial, cosmetic changes and inadvertently omitted material from Ordinance No. 11000. Secondly, although the fees under Ordinance No. 11000 were not labeled "inventory fees" but denominated as a biennial "existing sign use permit fee," it is apparent that (a) both fees related to signs existing as of the effective date of Ordinance No. 11000 (Apr. 5, 1973); (b) both fees resulted from the necessity of an administrative inventory and inspection; (c) the revenue from both fees was designed to recover the City's costs relating to the sign inventory process; and (d) Ordinance No. 11718 eliminated the biennial use permit fee and substituted the lesser, one-time inventory fee because it more accurately reflected the actual costs per sign, predicated upon its type and size, incurred by the City in the inventory process. Thirdly, section 95.0118[6] of Ordinance No. 11718,

---

[6]Section 95.0118 provides:

"A Maintenance Certification Sticker shall be obtained for every sign in existence on April 5, 1973. Such sticker shall be obtained within 30 days of receipt of a written notice that such a sticker is required. Signs in existence on April 5, 1973, which do not conform to the provisions of this Code, but which were constructed, erected, affixed, or maintained in compliance with all previous regulations, shall be regarded as nonconforming signs which may be continued until March 1, 1980, before conformance or removal, except for temporary signs and devices, the duration of which may not exceed the times specified by Section 101.1120. Temporary signs and devices shall be controlled by the provisions of Section 101.1120, regardless of the date of original installation. No right to continue the

like section 95.0107(C) regarding sign inventory fees, refers to the effective date of Ordinance No. 11000 (Apr. 5, 1973) in the context of the requirement of a maintenance certification sticker. Further, section 95.0118 declares that any sign erected after the effective date of Ordinance No. 11000 need not be removed or brought into conformance due to regulatory revisions. Finally, section 95.0107(B) of Ordinance No. 11718 provides in pertinent part:

"Increases in fees established by this ordinance shall not apply to any sign for which the fee was paid prior to the effective date of this ordinance.

"If the Permit Fee for any sign is reduced because of the provisions of this ordinance, and the fee for such sign has already been paid, an appropriate refund of the difference in fees shall be paid to the payor."

Moreover, in response to various assertions made by both parties relating to the implication of a saving clause, it is the general rule that: " 'The repeal, without a saving clause or provision, of a statute imposing a license tax or fee takes away the right to collect an unpaid tax which is due even though a suit to collect the tax is pending. By the repeal of statutes which authorize the making of assessments and the collection thereof, not only the remedy for the collection of an assessment but also the lien or right is taken away, although expenses have been incurred on the faith of such assessment. *And nothing less than* a plain exception of existing cases or claims from, the operation of the repealing act or *a continuance of the same system of taxation under new regulations will save such cases or claims from the effect of the repeal.*' " (25 R.C.L. 940, § 193, as cited in *Cal. Emp. Com.* v. *Arrow Mill Co.* (1941) 45 Cal.App.2d 668, 672 [114 P.2d 727]; italics added.) It is apparent from the foregoing that a continuation of the same basic system of imposing a regulatory license fee was intended by the city council in its enactment of the inventory fee in Ordinance No. 11718 with the only variations being that the fee would be renamed, imposed only once and more accurately reflect solely the costs incurred by the City in its inventory process.

---

use of temporary signs and devices is conferred by this Section.

"Any sign owner, whether a sign user or a sign lessor or lessee, may seek relief from this provision by appealing to the Sign Code Board of Appeals in accordance with the provisions set forth in Section 95.0122 through Section 95.0125 for a longer use period.

"Any sign erected under the provisions of Chapter X, Article I, Division 11, and Chapter IX, Article 5, Division 1 of this Code and subsequent to the effective date of Ordinance 11,000 N.S. need not be removed or brought into conformance due to regulatory revisions to Chapter X, Article I, Division 11, unless said sign is relocated or altered to the extent that a Building Permit is required."

■ Plaintiffs also argue section 95.0107(C) is unconstitutional because it is "in the nature of an ex post facto or bill of attainder law."[7]

[7]Plaintiffs make this suggestion because sections 95.0126 and 95.0127 of Ordinance No. 11718 provide:

"A. It shall be unlawful for any person to erect, place, construct, reconstruct, alter, maintain or move any sign, or to do any act contrary to or in a manner contrary to any direction, instruction, specification, or provision contained in this Code or any notice lawfully given or posted pursuant to the provisions of this Code or to do any act without any permit hereby required or contrary to the conditions upon which any permit has been issued pursuant to this Code; or to refrain from doing or taking, or to fail to do or take, any act or precaution required to be done or taken prior to, or in doing, anything permitted as in this Code or, in any regulation or specification adopted by this Code provided by any notice lawfully given or posted pursuant to the provisions of this Code; and whether or not in any such case it is expressly stated that the doing of or the failure to do the thing mentioned, shall be lawful.

"B. Every person who violates any of the provisions of the Code, or who causes, suffers, or permits any act or thing to be done in contravention or in violation of any of the provisions of this Code, or who neglects or refrains from doing anything required to be done by any of the provisions of this Code, or who carries out or who suffers, causes, or permits to be carried out any development in a manner prohibited by or contrary to any of the provisions of this Code, or who fails to comply with any order, direction, or notice given under this Code, may be deemed to be guilty of a misdemeanor and shall be liable to the penalties imposed by Section 95.0127. For each day that a violation is permitted to exist, it shall constitute a separate offense.

"C. Where any sign or part thereof contravenes this Ordinance or where any sign is in such a condition as to be in danger of falling or is a menace to the safety of persons or property, the Building Official shall give to the owner or person in charge of the sign written notice specifying the danger of the violation, ordering the cessation thereof and requiring either the removal of the sign or the carrying out of remedial work in the time and in the manner that the notice shall specify. Such notice shall be posted by registered mail, return receipt requested or delivered to the owner of the sign or person in charge personally. In the event of failure to comply after 10 days from receipt of said notice, the Building Official may request that the City Council declare the sign a public nuisance, and such sign may be abated in the manner prescribed by applicable law.

"D. In the event the Building Official determines that a sign does not conform to the provisions of this Code, the Building Official shall give written notice to the owner of the sign or, if the sign owner cannot be located, to the owner of the building or premises upon which the sign is located. Failure to remove the sign or correct the conditions existing within the time specified in the written notice shall constitute a violation of this Code and subject the owner of the sign or building to the penalties prescribed in Section 11.12.

"E. Upon discontinuance in business or occupancy of any establishment, the Building Official may require the removal of the on-premise signs advertising or identifying the establishment according to the procedure specified in Section 95.0119."

Section 95.0127 provides: "Upon conviction, any person who violates any of the provisions of this Ordinance shall be guilty of a misdemeanor, and such person may be punished by a fine of $500 or by imprisonment in the County Jail for not more than six months."

Article I, section 9 of the California Constitution prohibits the passage of a bill of attainder or an ex post facto law. The modern definition of a bill of attainder is:

" ' "[A] legislative act which inflicts punishment without a judicial trial." ' . . . Such '. . . legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution.' " *(California State Employees' Assn.* v. *Flournov* (1973) 32 Cal.App.3d 219, 224, 225 [108 Cal.Rptr. 251], citing *United States* v. *Lovett* (1946) 328 U.S. 303, 315-316 [90 L.Ed. 1252, 1259, 66 S.Ct.

We disagree. The express language of the ordinance makes unlawful only those acts committed after its enactment. Further, ex post facto punishment is not involved here since the City is seeking neither the invocation of higher fees under Ordinance No. 11718 nor the punishment of anyone for nonpayment under the former fee provisions of Ordinance No. 11000. The evidentiary record establishes the inventory fee imposed under Ordinance No. 11718 was decreased in order to reflect actual costs; sign users who paid higher fees under Ordinance No. 11000, than under Ordinance No. 11718, were refunded the difference by the City; and no fees were collected under Ordinance No. 11718 for signs inventoried between the adoption of the two ordinances in controversy where the signs were removed either before or after adoption of Ordinance No. 11718. Finally, we have construed Ordinance No. 11718 to be a continuation of the on-premises sign law as envisioned and enacted in Ordinance No. 11000.

*The Imposition of a Sign Inventory Fee Which Constitutes a Regulatory License Fee Does Not Violate the Constitutional Guarantee of Freedom of Speech*

Plaintiffs challenge the constitutionality of the inventory fee provisions of Ordinance No. 11718 (§ 95.0107(C)) on the theory that the imposition of the fee upon signs already in legal use imposes an undue restriction, in essence, a "chilling effect," upon the sign user's right to communicate and project his information to the public in violation of the First Amendment right of freedom of speech. We find this argument to be unpersuasive.

It is clear commercial speech is embraced within the protection of the First Amendment. (*Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817, 1825-1830]; see also *Linmark Associates, Inc.* v. *Willingboro* (1977) 431 U.S. 85 [52 L.Ed.2d 155, 97 S.Ct. 1614, 1617-1618]; *Young* v. *American Mini Theatres* (1976) 422 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440, 2451].) Like other protected speech, however, the First Amendment permits reasonable regulation as to time, place and manner, where necessary to further significant governmental interests. (*Id.,* 422 U.S. at p. 63, fn. 18 [49 L.Ed.2d at p. 322, 96 S.Ct. at p. 2449]; *Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 96 S.Ct. at

1073].) While an ex post facto law is defined as " ' "one which, in its operation, makes that criminal or penal which was not so at the time the action was performed; or which increases the punishment; or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage." ' " (*People* v. *Benefield* (1977) 67 Cal.App.3d 51, 58 [136 Cal.Rptr. 465].)

p. 1830.) Indeed, the nature of commercial speech as compared to other protected speech makes it more susceptible to regulation without violation of the First Amendment. (*Id.*, at p. 1830, fn. 24; see also *Ohralik v. Ohio State Bar Assn.* (1978) 436 U.S. 447 [56 L.Ed.2d 444, 98 S.Ct. 1912, 1918.)

This court in *Bohannan* v. *City of San Diego* (1973) 30 Cal.App.3d 416, 426 [106 Cal.Rptr. 333], held that a city zoning ordinance which placed limitations on the design, size, content and location of signs permitted in a particular historical redevelopment area, did "not constitute a denial of the right to advertise as a concomitant of the constitutional guarantee of freedom of speech, but [was] a permissible regulation in the exercise of the police power."

The imposition of license fees in connection with legislation regulating First Amendment protected activity is not unconstitutional where the fee is designed solely for the purpose of reimbursing the governmental entity with the regulatory costs incident to the administration of the act. (*Cox* v. *New Hampshire* (1941) 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 766, 133 A.L.R. 1396]; *Baldwin* v. *Redwood City, supra,* 540 F.2d at p. 1371.) Consequently, we conclude the sign inventory fee does not infringe upon the First Amendment right of freedom of speech. It constitutes a license fee, regulatory in nature, enacted for the sole purpose of recovering the administrative costs of the sign ordinance. The reasonable nature of the graded fee schedule (discussed *ante*) which provides for the equitable assessment of each sign based upon its actual and proportionate cost to the City in its inventory program, as well as the 100 percent penalty provision (discussed *infra*), insulates the sign inventory fee from this constitutional attack.

### The 100 Percent Penalty Fee Provision for Delinquent Inventory Fees is Reasonable.

Plaintiffs further contend the 100 percent penalty provision imposed by Ordinance No. 11718 (§ 95.0107(C)) is "unconstitutional, unreasonable and artibrary," as well as a denial of due process.[8] In regard to the former argument, it is without merit as the testimony of witness Dillon established that the expense to the City in collecting delinquent inventory fees is substantially greater than the revenue gained from the collection of the delinquent penalties. Considering further that the greatest fee

---

[8]Section 95.0107(C) provides in pertinent part: "For each Sign Inventory Fee not paid within 30 days after receipt of a written notice to pay, the Fee shall be twice the amount specified above."

imposed for any sign is $13.70, it is apparent the 100 percent penalty fee is indeed reasonable.

Concerning the plaintiffs' due process argument or that the provision in controversy was applied in an unreasonable and arbitrary manner, this issue is not cognizable upon this appeal since counsel for plaintiffs waived any such contention at trial by stating that plaintiffs were only challenging the reasonableness of the fee. Based upon this indication by plaintiffs' counsel, the trial court precluded defense counsel from examining witness Dillon in regard to the manner of the application of the penalty provision and eliciting the fact that where the building department has determined there existed a valid reason for late payment, the penalty provision was not enforced.

In addition, the general rule is that a party may not raise new issues or present different theories for relief for the first time on appeal which involve factual situations, "the consequences of which are open to controversy and were not put in issue or presented at the trial." (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; see also *People* v. *Pacific Employers Ins. Co.* (1973) 36 Cal.App.3d 296, 301 [111 Cal.Rptr. 350]; *Zito* v. *Firemen's Ins. Co.* (1973) 36 Cal.App.3d 277, 283 [111 Cal.Rptr. 392].) Therefore, plaintiffs are precluded from raising the foregoing issue on this appeal, since it involves a combined question of law and fact of which the evidentiary record is silent. (*Harriman* v. *Tetik* (1961) 56 Cal.2d 805, 810 [17 Cal.Rptr. 134, 366 P.2d 486].)

*Sections 95.0107(D) and (E) are Clear and Reasonably Certain in Nature*

Plaintiffs next challenge the constitutionality of Ordinance No. 11718 due to the ambiguity and lack of clarity of sections 95.0107(D) and (E). These sections respectively provide:

"D. FIELD-FABRICATED SIGN INSPECTION FEE Where the peculiarities of the installation require a directly illuminated sign to be fabricated on site, such sign shall have special inspection by Building Official, for which an Inspection Fee shall be paid. The Fee shall be $10.00 per hour, or fraction thereof, of inspection time, with a minimum of $10.00. This shall be in addition to the other prescribed fees.

"E. OTHER INSPECTION FEE The fee for any inspection not otherwise designated, shall be $10.00 per hour or fraction thereof, of inspection time, with a minimum fee of $100.00 [*sic*]." Amount $10.00 intended.

■ As we pointed out in *Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 491 [138 Cal.Rptr. 725], "[s]tatutes, regardless whether criminal or civil in nature, must be sufficiently clear as to provide adequate notice of the prohibited conduct as well as to establish a standard of conduct which can be uniformly interpreted by the judiciary and administrative agencies." (See *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375]; *McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766 [4 Cal.Rptr. 910].) However, the provisions under consideration do not involve the prohibition of conduct per se. Nevertheless, even if we assume, but not grant, an ordinance which imposes a fee must be reasonably definite and certain in character so as not to violate substantive due process, we conclude the provisions in controversy are not defective in the manner alleged, but are reasonably certain in nature. "It goes without saying that 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' [Citation.] Further ' "Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible." ' [Citation.] Also, 'It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited.' " (*In re Davis* (1966) 242 Cal.App.2d 645, 651 [51 Cal.Rptr. 702].)

In regard to section 95.0107(D), it is clear and unambiguous on its face concerning the type of inspection involved and the amount of the fee imposed. Reference to section 95.0104(A)(3), appearing below, enlightens the applicant of when the field-fabricated sign should be inspected. As to section 95.0107(E), it also is reasonably clear in character as the cited fee applies to all those inspections where a fee has not been designated in the ordinance. Therefore, a reasonable interpretation of the provision is that it constitutes a "catch-all" clause and does not apply where inspections are required and fees are imposed (i.e., building and sign inventory fees). This interpretation follows from reading section 95.0104,[9] which lists the

---

[9]Section 95.0104 provides:
"A. Building Permit. All work for which a Building Permit is required shall be inspected by the Building Official. The permittee or his agent shall notify the Building Official at least 24 hours in advance, that the work is ready for inspection, at the following stages: 1. When excavations for supporting footings, piling, poles, or columns have been made and before such excavations have been filled with earth or building materials of any kind. 2. When connecting elements have been installed on supporting buildings or structures, and before the sign is attached to these elements. 3. While a field-fabricated

inspections required under a building permit, together with section 95.0107(B)[10] which sets the building permit fee schedule and provides for a refund where "no portion of any work authorized by the permit has been performed and provided that *no inspections have been made.*" (Italics added.) Further, the inspection required for field-fabricated signs is specifically referred to in section 95.0107(D) as "special." warranting the imposition of the additional fee. In addition, such "catch-all" provisions are not considered too vague in nature, as they have been upheld by the courts as a necessary legislative tool of expedience. (*City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823, 838 [271 P.2d 5].) Finally, it should be cited that to the extent the provisions in controversy may be misconstrued, perhaps leading to an unreasonable interpretation and application, the affected party has an administrative remedy of appeal under section 95.0125 of Ordinance No. 11718.

*Owners/ Users of Legal Signs Have Not Been Denied Equal Protection Through the Imposition of the Sign Inventory Fee*

Plaintiffs next assert they have been denied equal protection of the law, since the City has chosen to impose the sign inventory fee only upon sign owners and users who maintain legal signs and not upon those who have illegal signs or signs on structures used exclusively for religious purposes. This argument is also unpersuasive.

It has been firmly established that occupations, businesses and activities may be classified and subdivided for the purposes of levying license taxes and fees, as it is within the discretion of the legislative body or municipality to establish those various classifications and to exact from them license taxes which may vary in amount from class to class, subclass to subclass. (*Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 142 [222 P.2d 879]; *Clark* v. *City of San Pablo* (1969) 270 Cal.App.2d 121, 126

sign is being assembled and the internal wiring and structural elements are exposed to view. 4. After erection. installation. construction. or creation by painting is completed.

"The Building Official. upon notification from the permittee or his agent, shall inspect the sign and its supports and connections and shall either approve that portion of the work or shall notify the permittee wherein it fails to comply with this Code. All work shall be done in conformance with the Building Permit and the approved plans.

"B. Maintenance Certification Sticker. All signs for which a sticker is required shall be subject to inspection biennially by the Building Official. The Building Official and his deputies are hereby authorized to enter upon any property or premises to ascertain whether the provisions of this Code are being obeyed. Such entrance shall be made during business hours unless an emergency exists. A sign user shall provide all necessary access and equipment to the Building Official for the purpose of conducting the required inspection."

[10]See footnote 4, *ante* for section 95.0107(B).

[75 Cal.Rptr. 726]; 9 McQuillin, Municipal Corporations (3d ed. rev.) §§ 26.59, 26.60, pp. 126-135.) Hence a municipality may impose license fees at differing rates upon different classes provided the classification created is reasonable. (*Helton* v. *City of Long Beach* (1976) 55 Cal.App.3d 840, 844 [127 Cal.Rptr. 737].) "It may create subclasses of businesses engaged in the same type of activity for the purpose of imposing different rates of tax if the classification 'is founded on natural, intrinsic or fundamental distinctions which are reasonable in their relation to the object of the legislation . . . .' " (*Ibid.;* see also *Kelly* v. *City of San Diego* (1944) 63 Cal.App.2d 638, 644 [147 P.2d 127].) In other words, the classification within the ordinance does not violate equal protection "if the distinction rests upon a rational basis, and it must be presumed to rest on that basis if there is any conceivable state of facts which would support it." (*City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804].)

 The exclusion of unlawful sign installations from the inventory fee is reasonable in nature, since the City's intent is to abate illegal signs and not to sanction them by the imposition of the fee. Legal signs which were removed following the inventory were also excluded from the inventory fee. Further, the expense involved in discovering the illegal signs was not passed on to the legal signs through the inventory fee. Consequently, we can find no violation of equal protection in the City's imposition of the inventory fee upon solely legal signs in use. Moreover, as the trial court stated: "Although the inventory fee is a burden which falls on sign users alone and may not, for some, be an easy burden to carry, it is not unconscionable to require those creating the need for governmental regulation to pay the cost thereof."

 In regard to the religious exemption from the sign inventory fee, it seems logical the city council may well have thought that the noncommercial, charitable nature of religious institutions justified exemption. Whether the ordinance sets forth a valid religious exemption here presents the identical problem as that of classification: if those exempted "may be included in a distinct class then the equal protection of the laws is not denied to those taxed." (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d at p. 144.) "No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary." (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d at p. 142.)

Our Supreme Court stated in *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 475 [20 Cal.Rptr. 609, 370 P.2d 313]: "When a legislative classification is questioned, if facts reasonably can be conceived that would sustain it, their existence is presumed, and the burden of showing arbitrary action rests upon the one who assails the classification." Therefore, we conclude the instant religious exemption to be proper, as "[w]e cannot substitute our judgment for that of the City's legislative power and conclude that there was no conceivable basis for the classification . . . ." (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d at p. 144.)

*The Amortization Scheme for Nonconforming Signs is Reasonable on Its Face and in Its Application to Property of Plaintiff D.H.E. Enterprises, Inc.*

Plaintiffs additionally contend that the amortization scheme provided for in Ordinance No. 11718 as the basis for the removal of nonconforming signs constitutes "a masquerade of respondent's power of eminent domain under the guise of the police power." They further assert the scheme is unreasonable on its face as it fails to take into consideration the value and structural soundness of the signs, as well as provide a reasonable period of amortization. Finally, plaintiff D.H.E. Enterprises, Inc. contends the amortization scheme is unreasonable in its application to its property.

Under Ordinance No. 11718, which became effective on December 12, 1975, nonconforming signs are allowed to remain in use until March 1, 1980, when conformance or removal is required (§ 95.0118).[11] Hence, this scheme provides for an amortization period of in excess of four years, two months. However, since we have concluded that Ordinance No. 11718 constitutes a continuation of Ordinance No. 11000, the amortization period thus commenced upon the effective date of Ordinance No. 11000 (Apr. 5, 1973), rather than the effective date of Ordinance No. 11718. Accordingly, the amortization period is just shy of seven years. This period can be extended an additional three years by the appellate process provided for in the ordinance.

California decisional precedent establishes beyond doubt "that a city seeking to eliminate nonconforming uses may pursue two constitutionally equivalent alternatives: It can eliminate the use immediately by payment of just compensation, or it can require removal of the use without compensation following a reasonable amortization period."

---

[11]See footnote 6, *ante.*

(*Metromedia, Inc.* v. *City of San Diego* (Cal.).) The use of a reasonable amortization scheme does not constitute a taking of property, as it "provides an equitable means of reconciliation of the conflicting interests in satisfaction of due process requirements." (*City of Los Angeles* v. *Gage* (1954) 127 Cal.App.2d 442, 460 [274 P.2d 34].) Although inevitably accompanying the termination of a nonconforming use is some hardship to someone, we must be mindful that: " 'every exercise of the police power is apt to affect adversely the property interest of somebody.' [Citation.] Implicit in the theory of the police power, as differentiated from the power of eminent domain, is the principle that incidental injury to an individual will not prevent its operation, once it is shown to be exercised for proper purposes of public health, safety, morals, and general welfare, and there is no arbitrary and unreasonable application in the particular case." (*Livingston Rock etc. Co.* v. *County of L.A.* (1954) 43 Cal.2d 121, 127 [272 P.2d 4].)

The amortization scheme must be reasonable in character, commensurate with the investment involved. "The determination of the length of a reasonable period of amortization is not merely a matter of accounting. 'It is not required that the nonconforming property concerned have no value at the termination date.' [Citation.] The determination instead involves a process of weighing the public gain to be derived from a speedy removal of the nonconforming use against the private loss which removal of the use would entail." (*Metromedia, Inc.* v. *City of San Diego* (Cal.) An amortization period of one year has been generally held to be unreasonable except as to signs fully depreciated for federal tax purposes. (*National Advertising Co.* v. *County of Monterey* (1970) 1 Cal.3d 875, 880 [83 Cal.Rptr. 577, 464 P.2d 33]; *National Advertising Co.* v. *County of Monterey, supra,* 211 Cal.App.2d at p. 381; *City of Santa Barbara* v. *Neon Sign Co.* (1961) 189 Cal.App.2d 188, 195-196 [11 Cal.Rptr. 57], disapproved on other grounds in *Metromedia, Inc.,* v. *City of San Diego,* (Cal.).) However, the Supreme Court in *Metromedia, Inc.* v. *City of San Diego* (Cal.), held that an amortization period ranging from one year to four years, depending upon the depreciated value of the sign, is not unreasonable on its face. Further, other courts have upheld amortization periods of two years and eight months (*People* ex rel. *Dept. Pub. Wks.* v. *Adco Advertisers* (1973) 35 Cal.App.3d 507, 513 [110 Cal.Rptr. 849]), three years (*City of Escondido* v. *Desert Outdoor Advertising, Inc., supra,* 8 Cal.3d 785; *Naegele Outdoor Adv. Co.* v. *Village of Minnetonka* (1968) 281 Minn. 492 [162 N.W.2d 206], and five years (*Art Neon Co.* v. *City and County of Denver* (10th Cir. 1973) 488 F.2d 118, 122; *County of Santa Barbara* v. *Purcell, Inc., supra,* 251 Cal.App.2d 169; *E. B. Elliott Adv. Co.*

v. *Metropolitan Dade County* (5th Cir. 1970) 425 F.2d 1141, 1154). Therefore, it is apparent that the amortization period provided for in Ordinance No. 11718 of just shy of seven years, with the possibility of an extension of an additional three years by appeal, is not unreasonable on its face.

In regard to the application of the amortization scheme in controversy to the property of D.H.E. Enterprises, Inc., we note that plaintiff has the burden of proving the amortization period is unreasonable in its application to its property as the lack of credible evidence on the issue supports a finding of reasonableness. (*Metromedia, Inc.* v. *City of San Diego* (Cal.); *National Advertising Co.* v. *County of Monterey, supra,* 1 Cal.3d 875, 879; *Bohannan* v. *City of San Diego, supra,* 30 Cal.App.3d 416, 426; *National Advertising Co.* v. *County of Monterey, supra,* 211 Cal.App.2d at p. 381.) Each case must be determined on its own facts. (*Metromedia, Inc.* v. *City of San Diego* (Cal.); *National Advertising Co.* v. *County of Monterey, supra,* 1 Cal.3d at p. 879.) Consequently, "the fact the amortization period may be unreasonable as to a particular property does not invalidate its application to other property or invalidate the ordinance of which it is a part." (*Bohannan* v. *City of San Diego, supra,* 30 Cal.App.3d at p. 426.)

█ The relevant factors considered in determining whether an amortization period is unreasonable in its application to a particular property include amount of investment or original cost, present actual or depreciated value, dates of construction, amortization for tax purposes, salvage value, "remaining useful life, the length and remaining term of the lease under which it is maintained, and the harm to the public if the structure remains standing beyond the prescribed amortization period." (*Metromedia, Inc.* v. *City of San Diego* (Cal.), see *National Advertising Co.* v. *County of Monterey, supra,* 1 Cal.3d at pp. 878, 880; *Livingston Rock etc. Co.* v. *County of L.A., supra,* 43 Cal.2d at p. 127; *Bohannan* v. *City of San Diego, supra,* 30 Cal.App.3d at p. 425; *National Advertising Co.* v. *County of Monterey, supra,* 211 Cal.App.2d at p. 381; *City of La Mesa* v. *Tweed & Gambrell Mill* (1956) 146 Cal.App.2d 762, 768 [304 P.2d 803]; *Art Neon Co.* v. *City and County of Denver, supra,* 488 F.2d at p. 122.) Section 95.0124 of Ordinance No. 11718 regarding the determination of whether to grant or deny an extension of time for amortization requires the consideration of the foregoing factors, as well as others.[12]

---

[12]Section 95.0124 provides:

"A. After conducting a public hearing on an application for extension of time under Section 95.0123, the Board may, by resolution, deny said application or grant such

Plaintiff D.H.E. Enterprises, Inc. relies upon evidence to the effect that its signs are structurally sound and valuable to its business; with periodic maintenance, they have an indefinite life span; and it would cost in excess of $10,000 to replace them. Plaintiff's proffered evidence is insufficient, as it has failed to carry its burden of establishing the amortization period is unreasonable in its application to its property. In regard to the cited evidence relating to periodic maintenance and life span, the Supreme Court held in *National Advertising Co.* v. *County of Monterey, supra,* 1 Cal.3d at page 880: "Although essential maintenance repairs may be said to prolong to a degree the useful life of any structure, and are permitted to those that are nonconforming [citation], the repairs cannot be relied upon to defeat zoning legislation which looks to the future and the eventual liquidation of nonconforming uses." Concerning the estimated cost of replacement, we concur with the trial court, following a review of the exhibits, that the estimated cost includes "an extensive remodeling of the exterior business premises which would greatly enhance their value." Finally, we note plaintiff still has the opportunity to seek an extension to the amortization period through the administrative appellate process provided for in Ordinance No. 11718.[13]

---

extension equal to or less than that applied for where, after hearing testimony or other evidence, it concludes that strict application of the nonconforming sign provisions would be unreasonable as to a particular sign: strict application of the nonconforming sign provisions would create a hardship upon the applicant which was not brought about by an act of the applicant: and the hardship resulting from strict application of the nonconforming sign provisions outweighs any detriment to the public caused by granting an extension of time.

"In making a determination as to granting or denying extensions of time, the board shall consider any evidence presented as to the following matters, but not limited thereto:
1. Age, condition and physical characteristics of the sign:
2. Location:
3. Remaining economic life:
4. Depreciation treatment for income tax purposes:
5. Investment in sign:
6. Monopoly or advantage resulting from fact that similar new signs are prohibited:
7. Cost to remove sign and salvage value:
8. Extent of nonconformity.

"B. A resolution made by the Board under A. above shall be filed with the City clerk, Zoning Administrator, the Building Official and the County Recorder of San Diego County, and a copy shall be mailed to the applicant. The resolution shall not be filed with the County Recorder if the resolution is a denial of the extension of time.

"C. The decision of the Sign Code Board of Appeals shall be final."

[13]In light of the nature of plaintiffs' remaining contentions, we do not address them in the body of this opinion and dispose of them in the following manner.

First, relying apparently on Code of Civil Procedure section 634, plaintiffs urge the trial court prejudicially erred in failing to provide them with a hearing on their written objections to the proposed findings of fact and conclusions of law and their request for specific findings and conclusions. This contention is without merit. Section 634 does not require the trial court to hold such a hearing. (*Kanner* v. *Globe Bottling Co.* (1969) 273

*Disposition*

The judgment is affirmed.

Staniforth, Acting P. J., and Ehrenfreund, J.,* concurred.

---

Cal.App.2d 559, 567 [78 Cal.Rptr. 25].) Indeed, California Rules of Court, rule 232(d) and (f) makes it abundantly clear that the granting of such a hearing is discretionary upon either its motion or that of a party. Here, no request for a hearing was made by either party. The record is devoid of any showing of an abuse of discretion.

Secondly, in a passing manner, plaintiffs allege that "[r]equested specific Findings nos. 3, 4, 5, 6, 7, 10, 11 and 12 . . . and Conclusion of Law no. 6 . . . each separate and apart from the other, are material matters presenting real issues which are not answered by the findings of fact or conclusions of law adopted by the court." It is sufficient to say that following a complete review of the plaintiffs' requested specific findings of fact and conclusions of law compared to the trial court's adopted findings of fact and conclusions of law, this allegation is without substance.

Thirdly, plaintiffs generally attack several of the trial court's findings of fact by merely arguing no evidence supports them, combined occasionally with a conclusory statement contrary to the substance of the finding(s) under attack. It is firmly settled that:

"a reviewing court must start with the presumption that the record contains evidence to sustain every finding of fact; the appellant must demonstrate that there is no substantial evidence to support the challenged findings; one contending the evidence does not support some particular issue of fact must set forth in his brief *all* the material evidence bearing upon that issue and not merely the evidence favorable to him; failure to so state the evidence shall be deemed a waiver of the claimed error." (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 152 [135 Cal.Rptr. 802].) Plaintiffs' brief fails to comply with the cited rules and, consequently, their attack upon the findings, sounding in sufficiency of evidence, is deemed waived. Nevertheless, we note the evidentiary record amply supports the trial court's ruling in this matter.

*Assigned by the Chairperson of the Judicial Council.