Filed 7/24/13  Metropolitan News v. LA Met. Transp. Auth. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| METROPOLITAN NEWS COMPANY, | B245557 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC465389) |
| v. | |
| LOS ANGELES METROPOLITAN TRANSPORTATION AUTHORITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Roger M. Grace and Jo-Ann W. Grace, for Plaintiff and Appellant.

Law Offices of Mark J. Wodin and Mark J. Wodin, for Defendant and Respondent.

————————————————

**INTRODUCTION**

Metropolitan News Company (Met News) filed a complaint challenging the constitutionality of a registration fee that the Los Angeles County Metropolitan Transportation Authority (MTA) imposes on individuals or entities who employ lobbyists for the purpose of influencing MTA action. The complaint asserted three claims alleging that the fee violated Met News's constitutional rights to free speech and to petition the government for redress of grievances. MTA removed the matter to federal court and filed a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12, subdivision (6). The district court dismissed two of the claims and elected not to exercise supplemental jurisdiction over the remaining claim, which alleged violation of Business & Professions Code section 17200.

After the case was remanded to state court, Met News filed a motion to file an amended complaint that added several new state law claims asserting MTA's fee violated several constitutional rights, including freedom of speech, the right to petition, equal protection and due process. The trial court ruled that, as a result of the federal action, Met News was barred under claim preclusion from pursuing any claims related to its free speech or petition rights. It further ruled, however, that Met News was permitted to amend its complaint to assert claims predicated on other forms of constitutional violations. Met News then filed a second amended complaint. The court sustained a demurrer to the complaint without leave to amend. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A. Original Complaint and Federal Court Proceedings*

Metropolitan News Company (Met News) filed a first amended complaint asserting three claims against the Los Angeles Metropolitan Transportation Authority (MTA) arising from the payment of a fee imposed on employers of lobbyists. The complaint alleged that, in 2010, the MTA circulated a "tentative plan" calling for the "exercise of eminent domain over a building in downtown Los Angeles . . . used by [Met

2

News] as its offices and the site of its printing press." Met News mailed MTA a "check in the amount of $75 as a fee for registering as an employer of a lobbyist. A letter accompany[ing] the check . . . . indicated that payment was being made under protest and that return of the check was demanded. [The sum] was not returned . . . [or] refunded."

Met News's first claim–captioned "To Recover Fees Paid Under Protest"–alleged that Met News had "an absolute right under the federal and state constitutions to have a paid representative speak on its behalf, and the action of [MTA] to condition that right upon the payment to it of a fee is unlawful." Met News contended that, as a result of these constitutional violations, MTA was "legally obliged to return [the $75 fee] to plaintiff."

The second claim alleged that the fee qualified as an unlawful business practice within the meaning of the California's unfair competition law, Business & Professions Code, §§ 17200, et seq. (UCL), because it violated "rights . . . conferred by the First Amendment to the United States Constitution (which guarantees freedom of speech and the right to petition government for redress of grievances) . . . and . . . the California Constitution." The complaint explained that "[t]he right of a person to put forth concerns over a proposed governmental action, in an appropriate manner and at times scheduled for the receipt of comments at a public meeting, is absolute. It is immaterial whether those concerns are expressed by the person who would be directly affected by the government action or by a surrogate. Articulating such concerns to employees of the governmental entity that is proposing an action is likewise protected speech whether the potentially affected person speaks personally or through a representative. . . . [¶] . . . . [A]s a matter of practice, [MTA] conditions the enjoyment of [these rights] upon payment to it of a fee whenever the person directly affected hires another to articulate the cause. It thus charges for a license for the privilege of speaking[, which] is unlawful . . ."

The third cause of action asserted a similar claim under 42 U.S.C. section 1983, alleging that MTA "denied [Met News] its right under the United States Constitution to freedom of speech and to petition the government for redress of grievances by conditioning the exercise of those rights on the payment to it of a licensing fee. It persists

3

in the practice of exacting such a fee wherever the party wishing to present a position hires a surrogate, such as an attorney at law, to do so."

MTA removed the complaint to federal court and filed a notice to dismiss pursuant to Federal Rule of Civil Procedure (FRCP) 12, subdivision (b)(6) or, alternatively, for a more definitive statement pursuant to FRCP 12, subdivision (e). On October 28, 2011, the district court entered an order dismissing the first and third causes of action for failure to state a claim, and remanding the UCL claim to state court.

On the first cause of action, the court explained: "Plaintiff brings the first claim under both California and U.S. Constitutions. . . . Plaintiff's complaint does not state a specific basis of relief such that [MTA], or the Court, can analyze its claim. Rather, [Met News] cites the entire California and U.S. Constitution and does not state any specific basis on which relief can be granted. Under the pleading standards, the defendant must receive fair notice of the grounds upon with the claim rests. Therefore, the court DISMISSES the first claim."

On the third cause of action, the court ruled that Met News had failed to allege sufficient facts to state a section 1983 claim against the MTA: "Government entities may only be sued for the constitutional violations committed by their employees when the employee acts pursuant to a custom, policy or practice of the government authority. [Citation.] Plaintiff has not alleged any facts giving rise to a § 1983 claim against Defendant. The Court dismisses this claim with prejudice."

The court elected not to exercise jurisdiction over Met News's remaining UCL claim, explaining: "Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. In light of the fact that the first and third claims are dismissed, the Court declines to exercise supplemental jurisdiction of the second claim and remands the action to state court." Met News did not take any further action in the federal court.

## B. State Court Proceedings

### 1. *MTA's demurrer and Met News motion for leave to file an amended complaint*

On remand to the state court, MTA filed a demurrer to Met News's sole remaining claim arguing that government entities are not subject to liability under the UCL. Two days later, Met News filed a motion for leave to file a second amended complaint that included five causes of action: (1) assumpsit; (2) violation of the UCL; (3) violation of Civil Code section 52.1; (4) writ of mandate; and (5) declaratory relief. Each of the claims alleged that MTA's imposition of a $75 registration fee violated Met News's federal and state constitutional "rights to freedom of speech, to petition the government for redress of grievances, equal protection and due process." MTA opposed the motion for leave to amend, arguing that all of Met News's newly-proposed claims were "barred by res judicata" because the federal court's order constituted a final determination as to whether the $75 registration fee violated any federal and state constitutional rights.

On January 13, 2012, the trial court issued an order sustaining the demurrer without leave to amend and denying the motion for leave to file a second amended complaint without prejudice. On the demurrer, the court agreed with MTA's assertion that "public entities [could not] be sued under [the UCL]." On the motion for leave to file an amended complaint, the court ruled that a portion of the remaining claims set forth in Met News's proposed second amended complaint were barred under res judicata: "[T]he First and Third Causes of Action from the federal action involve the same primary rights as those alleged in the proposed Second Amended Complaint *to the extent* that [Met News] is alleging that [MTA's] actions were unconstitutional because they violated [Met News's] rights to freedom of speech and to petition the government for redress of grievances.'" The court further ruled, however, that the remaining portion of Met News's newly-proposed claims–which alleged violations of equal protection and due process rights–involved different "primary rights" than those adjudicated in the federal action and could therefore be pursued in the state court proceeding.

5

The court entered an order denying Met News's motion for leave to file a second amended complaint "with prejudice in regard to allegations that [MTA]'s actions were unconstitutional because they violated [Met News's] right to free of speech and to petition the government for redress of grievances," and denied the motion "without prejudice as to all other new, proposed allegations not based on [Met News's] primary rights to free of speech and freedom to petition."

### 2. *MTA's demurrer to Met News's second amended complaint*
#### a. *Summary of allegations in second amended complaint*

Following entry of the court's order, Met News filed a subsequent motion for leave to file a second amended complaint asserting claims for assumpsit, declaratory relief, violation of Civil Code section 52.1 and for writ of mandate. Each of these claims was predicated on alleged violations of Met News's equal protection and due process rights under the California Constitution.

The first cause of action alleged that, under principles of assumpsit, MTA was required to return the $75 fee because it had been wrongfully obtained through the enforcement of an unconstitutional regulation. Met News listed three ways in which the fee allegedly violated due process and equal protection rights enumerated in the California Constitution. First, Met News asserted that the regulation was "lacking substantive due process," explaining: "Lobbyists are regulated under [California] laws . . . and ordinances. Regulatees, including members of the legal profession, are commonly required to subsidize the costs of regulation, through dues or fees. However, it is an aberration for employers of regulatees being required to make payments, to be applied to the costs of regulation. Imposition of such a requirement on employers of lobbyists finds no support under in custom, in law, or in common sense."

Second, Met News alleged that the regulation authorizing the collection of the fee violated principles of due process because it permitted "the setting of the fee . . . . without providing guidelines or criteria for the [administrator] to utilize in making such a calculation." Third, it claimed that, the fee violated the equal protection clause by

6

creating "two classes of businesses:  GROUP 1: those that seek to influence action through speech of owners, officers, employees or volunteers, and GROUP 2: those that seek to influence action through speech of paid independent contractors, such as attorneys.  Imposing no fee for speech on Group 1, but conditioning speech upon payment for a fee for Group 2 . . . violates [Met News's] right to equal protection."

Met News's second cause of action for declaratory relief incorporated the allegations pertaining to the assumpsit claim and alleged that a dispute had arisen between the parties as to whether the fee requirement was "unconstitutional, in each of the respects set forth above."  Met News requested "a declaration" that the statute permitting the fee requirement was "Constitutionally infirm and unenforceable in general, and as applied to employers of lobbyists, in particular."

Met News's third cause of action alleged that, by enforcing the unconstitutional $75 fee requirement, MTA had violated Civil Code section 52.1, which prohibits any "person or persons, whether or not acting under color of law, [from] interfere[ing] by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ."  According to Met News, MTA's enforcement of the regulation authorizing the registration fee, which included criminal penalties for noncompliance, constituted a threat within the meaning of section 52.1

Finally, Met News's claim for writ of mandate sought an order requiring MTA to stop "exacting a fee from employers of lobbyists" that violated "substantive due process" and "equal protection."

### b.     MTA's demurrer to the second amended complaint

MTA filed a demurrer to each of the newly-proposed claims, arguing that: (1) Met News could not assert a common law claim of assumpsit against a public entity; (2) the declaratory relief claim was derivative of the assumpsit claim and should therefore be dismissed on the same ground; (3) the enforcement of an allegedly unconstitutional fee

7

did not qualify as a "threat[], intimidation, or coercion" within the meaning of Civil Code section 52.1; and (4) Met News was not entitled to a writ of mandate because, under the relevant statutory scheme, MTA had discretion to decide whether to impose the registration fee.

After hearing oral argument, the trial court entered an order sustaining the demurrer without leave to amend. Met News filed a timely appeal.

## DISCUSSION

### A. *The Trial Court Did Not Err in Denying Met News's Motion to Amend its Complaint to Add Claims Predicated on its Free Speech and Petition Rights*

Met News first argues that the trial court erred in ruling that, under principles of res judicata, the federal court action barred Met News from amending its complaint to add new claims predicated on purported violations of its right to free speech or to petition the government for redress of grievances.

#### 1. *Standard of review*

"Motions for leave to amend are directed to the sound discretion of the judge: 'The court may, in furtherance of justice and on any terms as may be proper, allow a party to amend any pleading . . . .' (Code Civ. Proc., § 473, subd. (a)(1).) However, the court's discretion will usually be exercised liberally to permit amendment of the pleadings. [Citations.] The policy favoring amendment is so strong that it is a rare case in which denial of leave to amend can be justified. [Citation.] 'Leave to amend should be denied only where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but under substantive law, no liability exists and no amendment would change the result.' [Citation.]" (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428.)

## 2. Claim preclusion applied to Met News's newly-proposed claims predicated on violations of the right to free speech and to petition

Met News argues that the federal court action did not bar it from amending its complaint in state court to add new claims predicated on the right to free speech or the right to petition. Met News contends that the federal court's order dismissing the first and third claims in the original complaint should not be given res judicata effect because: (1) the federal court did not make a determination "as to whether the licensing fee in question is violative of free-speech and free-petition rights under the U.S. or California constitutions"; (2) applying res judicata under the circumstances presented here would violate the strong public policy that cases should be decided on their merits; and (3) the federal court elected not to exercise supplemental jurisdiction over Met News's UCL claim, which raised similar constitutional issues.

"'The doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy.'" (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 973.) There are two aspects to the doctrine: claim preclusion and issue preclusion. "Claim preclusion 'prevents relitigation of the *same cause of action* in a second suit between the same parties or parties in privity with them.' [Citation.]" (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 530 (*Ferraro*).) Issue preclusion, also referred to as collateral estoppel, "bars the relitigation of *specific issues* that were actually litigated in an earlier proceeding and decided adversely to the party against whom the doctrine is asserted." (*Id.* at p. 531.)[1]

In this case, the trial court applied claim preclusion in ruling that the federal court's prior order barred Met News from amending its complaint in state court to add

---

[1] Although "the term 'res judicata' has been used to encompass both claim preclusion and issue preclusion," courts frequently use the term to refer only to claim preclusion. (See *Mycogen v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 (*Mycogen*), fn. 7; *Ferraro*, supra, 161 Cal.App.4th at p. 541, fn. 21 [noting "confusion over the distinctions between 'res judicata' (claim preclusion) and 'collateral estoppel' (issue preclusion)"].) For the purposes of clarity, we will refer to the two aspects of res judicata as claim preclusion and issue preclusion.

new state law claims predicated on the right to free speech and the right to petition. "[Claim preclusion] precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.]"" (*Mycogen, supra,* 28 Cal.4th at p. 897.) For purposes of claim preclusion, "California law defines a cause of action 'by focusing on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.]. . . .' [Citation.]" (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160, 17 Cal.Rptr.2d 639.)

Claim preclusion applies where three elements are shown: ""(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action . . . were parties to the prior proceeding. [Citation.]' [Citation]." (*Federal Home Loan Bank of San Francisco v. Countrywide Financial* (2013) 214 Cal.App.4th 1520, 1527.)

Met News does not dispute that the federal court action involved the same parties (Met News and MTA) and the same "causes of action" (alleged violations of Met News's primary rights to free speech and to petition the government for redress of grievances). It argues, however, that the federal court's dismissal of the first and third claims in the first amended complaint did not constitute a final judgment on the merits.

"California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, at least where the prior judgment was on the basis of federal question jurisdiction." (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452; *Limbach v. Hooven & Allison Co.* (1984) 466 U.S. 353, 361-362 [state court must apply federal law to determine preclusive effect of prior federal question judgment].) The first claim in Met News's first amended complaint alleged that MTA's $75 registration fee violated Met News's "absolute right under the federal . . . constitution[] to have a paid representative speak on its behalf"; the third claim asserted violation of MTA's civil rights under 42 U.S.C. § 1983. Thus, both claims

10

raised federal questions and we must therefore look to federal law to determine the preclusive effect of the federal court's rulings on those claims.

The federal court dismissed both claims under Federal Rule of Civil Procedure 12, subdivision (b)(6) for failure to state a claim. "Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." (*Stewart v. U.S. Bancorp* (9th Cir. 2002) 297 F.3d 953, 957 (*Stewart*) [citing *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 399, fn. 3 ["[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'"].) As explained by one federal court, a "[r]ul 12(b)(6) dismissal" necessarily qualifies as a judgment on the merits because "a district court analyzes the facts and legal claims in the complaint to determine if the plaintiff has alleged a [cognizable] cause of action." (*Stewart, supra,* 297 F.3d at p. 957.) Thus, under well-established federal law, the federal court's dismissal of Met News's first and third claims qualified as a final judgment on the merits.

Met News disagrees, arguing that the federal court's order cannot qualify as a dismissal "on the merits" for the purposes of claim preclusion because it did not address whether "the licensing fee in question is violative of free-speech and free-petition rights under the U.S. or California Constitutions." Met News contends that the federal court merely found that the "first claim [was] inadequately pled . . . and that the remedy sough under 42 USC § 1983 could not be invoked."

Met News, however, has cited no authority suggesting that a federal order dismissing claims under Rule 12(b)(6) is to be treated differently for purposes of claim preclusion depending on the extent to which it addressed the substantive aspect's of plaintiff's claim.[2] To the contrary, federal courts have generally held that, with certain exceptions inapplicable here, an involuntary dismissal (which includes a dismissal for

---

2    Indeed, Met News's opening and reply briefs do not cite or discuss any authority that relates to claim preclusion or res judicata. The only cases it cites in relation to the claim preclusion issue discuss the level of scrutiny that applies to regulations that restrict First Amendment rights.

failure to state a claim) "acts as a judgment on the merits for the purposes of res judicata, regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims." (*In re Schimmels* (9th Cir. 1997) 127 F.3d 875, 884.)

Met News's contention that claim preclusion is inapplicable because the federal court never addressed the constitutionality of MTA's fee confuses the two aspects of the res judicata doctrine. As explained above, collateral estoppel, also known as issue preclusion, "bars the relitigation of specific *issues* that were actually litigated in an earlier proceeding and decided adversely to the party against whom the doctrine is asserted." (*Ferraro, supra*, 161 Cal.App.4th at p. 531.) The trial court did not, however, apply collateral estoppel; it applied claim preclusion, which "bars the plaintiff from bringing a second suit on a cause of action that has already been litigated to judgment. It rests on the principle that a plaintiff is entitled to only one fair opportunity to litigate a given cause of action. He or she cannot 'split' it by reserving a portion for later adjudication; nor can he or she expect to be given a second opportunity to cure legal or factual deficiencies that led to his or her defeat in a prior suit." (*Ibid*.) Because the federal court entered a final judgment on causes of action based on Met News's rights to free speech and to petition the government for redress of grievances, Met News was barred from attempting to reassert those same cause of action in the state court proceedings.

Met News alternatively asserts that claim preclusion should not be applied where it would negate the strong public policy that seeks to dispose of cases on their merits. In effect, Met News contends that it would be unfair to apply claim preclusion in a manner that would deprive it of its right to a fair trial on the constitutional issues in controversy. However, nothing precluded Met News from pursuing its newly-proposed claims, which essentially seek a judgment declaring MTA's fee unconstitutional, in the federal court.[3]

---

[3] The proposed second amended complaint added four new claims predicated on purported violations of federal and state rights to free speech and to petition the government: assumpsit, violation of Civil Code section 52.1, declaratory relief and writ of mandate. Met News has abandoned the first two claims. The remaining two claims

12

These claims could have been included in MTA's original complaint, or alternatively, Met News could have sought to amend the complaint in federal court to add the claims.

In its appellate brief, Met News explains that it chose not to assert its newly proposed claims in the federal court because it has an "aversion to litigating in [that forum]." Instead, Met News waited to be "freed from the federal court" before asserting the newly-proposed claims set forth in the second amended complaint. These statements demonstrate that Met News made a conscious decision not to bring the claims in the federal court action. Claim preclusion is specifically intended to prohibit such conduct: "When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground." (*Harris v. Grimes* (2002) 104 Cal.App.4th 180, 188 (*Harris*).)

Finally, Met News argues that claim preclusion does not apply because the federal court elected not to exercise supplemental jurisdiction over it state UCL claim, which was predicated on the same alleged constitutional violations. Met News contends that because this "surviving cause of action also avers constitutional violations," it was necessarily entitled to amend its state law complaint to assert additional claims predicated on these same constitutional violations.

Generally, "a federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of that state claim in state court." (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286.) Under such circumstances, "California's prohibition on splitting causes of action" does not apply because "'it is not the plaintiff who made the decision to 'split' causes of action between state and federal court." (*Harris, supra* 104 Cal.App.4th at p. 188 [the rule seeks to "distinguish[] between a party's splitting of its causes of action and a court's doing the same thing. In effect, the rule"].) Although this rule clearly preserved Met News's ability to pursue its

seek an order declaring that MTA's fee is "constitutionally infirm" and commanding MTA to "cease exacting [the unconstitutional] fee from employers of lobbyists."

UCL claim in state court, it has no application to other claims that Met News chose not to pursue in federal court. As explained above, Met News made a conscious decision not to assert those claims, which involved the same primary rights as the claims adjudicated in the federal court, based on its preference for the state forum.[4]

### B. *The Trial Court Did Not Err in Sustaining MTA's Demurrer to the Second Amended Complaint*

Met News also argues that the trial court improperly sustained a demurrer to three claims set forth in the operative second amended complaint, which include: violation of California's UCL, request for declaratory relief and petition for writ of mandate.

#### 1. *Standard of review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.

---

[4]     Even if Met News's claims were not precluded under res judicata, they would be rejected on the merits. Met News "does not contest" that the State may impose registration and reporting requirements on employers of lobbyists. (See *Fair Political Practices Commission v. Superior Court* (1979) 25 Cal.3d 33, 46 (*Fair Political Practices*) ["the burden placed on employers of lobbyists to disclose their expenditures for lobbying purposes, and the action thereby sought to be influenced, does not constitute a substantial interference with the exercise of petition and speech rights"].) It argues, however, that the State may not impose a registration fee as part of those requirements. Met News fails to consider that the imposition of "fees in connection with legislation regulating First Amendment protected activity is not unconstitutional where the fee is designed solely for the purpose of reimbursing the governmental entity with the regulatory costs incident to the administration of the act." (*United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 174 (*United Business*); *Cox v. New Hampshire* (1941) 312 U.S. 569, 577 (*Cox*) [government is permitted to impose fees to "'meet the incident to the administration'" of constitutionally permissible regulation].) MTA's administrative code specifically directs that the amount of the registration fee charged to the employers of lobbyists is to be set "in an amount sufficient to cover the direct costs of implementing" the reporting and disclosure requirements. (MTA Admin. Code, § 5-25-020, subd. (B).) We fail to see how the imposition of a fee that is intended to cover the administrative costs of implementing constitutionally-permissible disclosure and reporting requirements violates Met News's state or federal speech or petition rights.

14

[Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### 2. *Government Entities Are Not Subject to Suit Under California's UCL*

Met News argues the trial court erred in ruling that government entities are not subject to suit under California's UCL (Business & Prof. Code, §§ 17200 et seq.) The UCL "prescribes penalties against 'persons' who engage in acts of unfair competition. (E.g., Bus. & Prof. Code, §§ 17203 [injunction], 17206 [monetary penalties].)"[5] (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1203 (*Trinkle*).) Section 17201 of the UCL sets forth "its own unique definition of 'person': 'As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.' [Citation.]." (*People for the Ethical Treatment of Animals, Inc. v. Ca. Milk Producers Advisory Board* (2005) 125 Cal.App.4th 871, 878 (*PETA*).)

---

**5** Section 17200 defines the term "unfair competition" to mean "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Section 17203, in turn, states: "Any person who engages . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

15

California courts have uniformly held that government entities do not fall within the UCL's definition of the term "person."[6] As explained in *PETA, supra*, 125 Cal.App.4th 871, the language of section 17201 does not include any reference to "public entities, and . . . the UCL [does] not otherwise evidence any intent to impose governmental liability." (*PETA, supra,* 125 Cal.App.4th. at pp. 878-879.) We agree with *PETA* and the "numerous [other] cases [that] have held that government entities are not 'persons' who may be sued under the UCL." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1203.)

Met News, however, argues that all of these cases were wrongly decided. In support, it cites *People* v. *Centr-O-Mart* (1950) 34 Cal.2d 702 (*Centr-O-Mart*), which ruled that the State of California was "a proper party plaintiff to maintain a civil action to restrain alleged violations of the Unfair Practices Act [UPA]." (*Id*. at p. 703.) The UPA (Business & Prof. Code, §§ 17000-17101, *et seq.*), which is distinct from the UCL, permits "[a]ny person or trade association" to "bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." (Business & Prof. Code, § 17070.) Under the UPA, the term "person" is defined to mean "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation." (Business & Prof. Code, § 17021.)

There are several important distinctions between the issues presented in *Centr-O-Mart*, which involved an interpretation of the UPA, and this case, which involves a claim asserted under the UCL. First, the UPA's definition of "person" includes specific references to government entities; the UCL's definition of "person" does not. Second, the UPA's definition of "person" includes the phrase "any person." Generally, our courts

---

**6** See, e.g., *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 209; *PETA, supra*, 125 Cal.App.4th at pp. 877-883; *California Medical Assn. v. Regents of University of California* (2000) 79 Cal.App.4th 542, 551*; Trinkle, supra*, 71 Cal.App.4th at pp. 1203-1204; *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 831*; Santa Monica Rent Control Bd. v. Bluvshtein* (1991) 230 Cal.App.3d 308, 318; *Paulus v. Bob Lynch Ford* (2006) 139 Cal.App.4th 659, 682, fn. 18 [government entities are "clearly immune from suit" under the UCL].)

16

have broadly construed the term "person" to include government entities unless such a construction would infringe on the government entity's sovereign powers. (See generally *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199, 277 (*City of Los Angeles*) [disapproved on other grounds in *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224].) The UCL's definition of "person," however does not include the phrase "any person"; instead the definition refers to "natural persons," which clearly does not extend to government entities. Third, as explained in *PETA, supra*, 125 Cal.App.4th 871, *Centr-O-Mart* "involved the question of whether the state was a 'person' which had standing to *bring* suit, not whether it was a 'person' which could be sued." (*Id*. at p. 880, fn. 8.) Nothing in *Centr-O-Mart* undermines the rationale of the numerous cases that have held the UCL does not apply to government entities.

Met News also argues that it may file a UCL claim against MTA because, as a general matter, government agencies may not be excluded from the operation of statutory provisions unless their inclusion would result in an infringement upon sovereign governmental powers. (See *City of Los Angeles, supra,* 14 Cal.3d at pp. 276-277.) Thus, according to Met News, in assessing whether a UCL action may be brought against a government entity such as MTA, we must evaluate whether the claim would offend the entity's sovereign powers.

This "'sovereign powers' maxim of statutory construction" is utilized to "resolve an unclear legislative intent[;] it cannot override positive indicia of a contrary legislative intent." (*Johnson v. Arvin-Edison Water Storage Dist*. (2009) 174 Cal.App.4th 729, 738.) In this case, "the issue of whether a public entity can be sued under the UCL as a 'person' is readily answered by reference to the plain language of section 17201, a section specifically enacted to answer any question of whose conduct the Legislature intended to be subject to the reach of [the] UCL. There is no persuasive way to argue that [a government entity] is a 'person' under the definition set forth in section 17201 of the UCL." (*PETA*, *supra*, 125 Cal.App.4th 881.)

17

### C. *Met News Has Failed to State a Claim for Violation of Equal Protection or Due Process*

Met News asserts that the trial court erred in sustaining a demurrer to its claims for declaratory relief and for a writ of mandate. The trial court dismissed Met News's request for declaratory relief based on its conclusion that the claim was "derivate" (*sic*) of the claims for assumpsit and violation of Civil Code section 52.1. The court dismissed the writ of mandate claim because it sought to challenge discretionary conduct. The court explained that the statute authorizing the registration fee–Public Utilities Code section 130051.18–permitted, but did not require, MTA to impose the registration fee and also allowed MTA to set the amount of the fee.

Met News contends that the trial court failed to acknowledge that both of these claims effectively requested an order declaring that the fee MTA imposes on the employers of lobbyists violates the equal protection and due process clauses of the California Constitution. According to Met News, unlike its claims for assumpsit and violation of Civil Code section 52.1, which seek monetary relief, its declaratory relief claim requested a "declaration that [MTA's regulation] is constitutionally infirm and unenforceable." Met News further contends that its writ of mandate claim did not challenge whether MTA had statutory authority to impose the registration fee or set the amount of the fee; rather, it sought an order "commanding . . . MTA to cease exacting a fee" that violates equal protection and due process rights.

Met News's claims of error are predicated on the assumption that its second amended complaint pleads facts sufficient to demonstrate a violation of the equal protection or due process clauses of the California Constitution. If the complaint fails to state any such violation, the alternative basis for the trial court's dismissal of the declaratory relief and writ of mandate claims–even if in error–was necessarily harmless.

Although the parties' moving papers in the trial court did not address whether the operative second amended complaint adequately states a violation of equal protection or due process rights, we have discretionary authority "to consider legal questions for the first time on appeal provided that the parties are afforded a reasonable opportunity to

18

address those questions. (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 205.) Pursuant to that discretionary authority, we requested the parties to provide supplemental briefing on the question of whether Met News's second amended complaint alleged sufficient facts to state a violation of the equal protection and due process claims. (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1452 ["Whether a complaint states facts sufficient to constitute a cause of action is a question of law"].)

> *a. Met News has failed to adequately plead a violation of the equal protection clause*

Met News argues that MTA's imposition of a registration fee on employers of lobbyists violates equal protection because: (1) it creates a classification affecting two similarly situated groups in an unequal manner; and (2) the classification is subject to strict scrutiny because it infringes on the exercise of fundamental rights; namely freedom of speech. According to Met News, the fee differentiates between individuals or entities who seek to influence MTA through the speech of paid lobbyists and individuals or entities who seek to influence MTA through speech by someone other than a paid lobbyist. Met News contends that, "for [entities] in the former group, and only them," the classification "conditions the exercise of free speech on the payment of a fee."

Met News has failed to plead a cognizable equal protection claim. "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, '"[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner."' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

Met News contends that persons or entities who employ a lobbyist to influence MTA are similarly situated to persons or entities who attempt to influence MTA through means other than a paid lobbyist. We disagree. The California Supreme Court has held

19

that the State may impose registration and reporting requirements on the employers of lobbyists based on its interest in protecting the political system from actual and perceived improper influence. (*Fair Political Practices*, *supra*, 25 Cal.3d at p. 48.) Met News expressly concedes that it is not challenging the validity of these reporting requirements, only the imposition of the registration fee. However, the government is permitted to impose fees that are "designed solely for the purpose of reimbursing the governmental entity with the regulatory costs incident to the administration of" a regulation that is itself permissible. (*See United Business, supra,* 91 Cal.App.3d at p. 174; *Cox, supra,* 312 U.S. at p. 577; *Moffett v. Killian* (D.C. Conn. 1973) 360 F.Supp. 228, 231-232 [government is permitted to charge "sum to cover the cost of" administering a lobbyist disclosure statute].) In this case, the MTA regulations state that the amount of the registration fee is to be set in an amount "to cover the direct costs of implementing" the reporting and disclosure requirements. (MTA Admin. Code, § 5-25-020, subd. (B).)[7] Because the fee is designed to reimburse MTA for the regulatory costs incident to administering the permissible reporting requirements, it too is permissible.

We therefore fail to see how employers who utilize lobbyists to influence the MTA can be described as "similarly situated" to those who seek to influence MTA without the aid of lobbyists. The former category is subject to reporting requirements (the validity of which Met News does not dispute), while the latter is not. The fee, in turn, is imposed to recoup the costs of administering those unchallenged reporting requirements.

> *b. Met News has failed to adequately plead a violation of the due process clause*

Metro News's due process claims fair no better. Metro News argues that MTA's fee violates state due process rights in two ways. First, it contends that charging a registration fee to the employers of lobbyists, rather than to the lobbyists they employ,

---

[7] The Public Utilities Code section authorizing the fee includes identical language, stating that the amount of the fee shall be "in an amount necessary to pay the direct costs of implementing this section." (Public Utilities Code, § 130051.18, subd. (b)(2).)

violates substantive due process because it bears no rational relationship to any legitimate government interest. Metro News does not dispute that California may impose reporting requirements on the employers of lobbyists nor does it dispute that the State can impose a registration fee directly on lobbyists. It contends, however, that "imposing a fee on the *employers of lobbyists*–that is, the users of services of lobbyists–is clearly not rationally related" to any legitimate legislative objective. Met News argues that although many professions are subject to regulatory fees, "[t[here is simply no precedent for users of services performed by regulatees . . . being assessed a fee in connection with the costs of regulation."

This argument fails. As discussed above, the stated purpose of the fee is to enable MTA to recover regulatory costs associated with administering the reporting requirements imposed on the employer of lobbyists. The MTA imposes separate reporting requirements and a separate registration fee directly on lobbyists. Thus, in effect, the MTA charges a fee to each entity that is subject to the lobbyist reporting requirements: employers of lobbyists are charged a fee to offset the costs of administering their reporting requirements, while lobbyists are charged a separate fee to offset the costs of administering their own reporting requirements. Each fee is rationally related to a legitimate government purpose: offsetting the administrative costs of implementing each separate entities' disclosure and reporting requirements.

Met News next contends that "the section of the MTA Code authorizing the ethics officer to set the fee" violates due process because there is "absolutely no standard as to how costs" are to be calculated. Met News asserts that the absence of any such "guidelines or criteria" invites administrators to arbitrarily set the amount of the fee. In support of these claims, Met News notes that MTA currently charges individual lobbyists a registration fee of $40, while charging each employer of a lobbyist a $75 registration

21

fee.**8** According to MTA, these substantially different fees show "that the lack of 'certain fixed standards and objective measurements' has led to a lopsided, irrational fee scheme."

It is unclear whether Met News is asserting that MTA's failure to develop an adequate standard constitutes an improper delegation of legislative authority (thereby implicating the separation of powers doctrine) or whether the regulation is impermissibly vague in violation of the due process clause.[9] In either case, we reject Met News's contention that the MTA regulation does not provide a sufficiently clear test or standard to guide administrators in setting the amount of the fee. The regulation clearly directs that the fee is to be set "in an amount sufficient to cover the direct costs of implementing this chapter."

The arguments set forth in Met News's complaint and its briefs imply that it does not believe MTA is complying with these mandates, setting fees that are either in excess of the costs of administration or based on factors not relevant to its administration costs. However, Met News's complaint does not include any claim asserting that the amount of MTA's registration fee violates the standards set forth in the administrative code or the section of the Public Utilities Code that authorizes the fee. Nor has it ever sought to

---

**8**     This fee schedule is available on MTA's website at http://lrs.metro.net/images/faq.pdf

**9**     The "'[t]he nondelegation doctrine' . . . is rooted in the principle of separation of powers that underlies our tripartite system of Government.'" (*Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1203-1204.) A statutory delegation of authority is generally valid "[w]here the Legislature, expressly or by implication, 'lays down a sufficiently clear test or standard" that will enable a reviewing court to determine whether the administrator has acted within the legislators' will." (*Ibid*.; see also *Dominguez Land Corp. v. Daugherty* (1925) 196 Cal. 468, 484 ["If . . . no standard by which the officer is to be governed be prescribed by the lawmakers, then there is an attempt to entrust a mere administrative officer with the plenary power of the legislature, and there will then be no guard against possible arbitrary action"].) On the other hand, under the due process clause, "an enactment is void for vagueness if its prohibitions are not clearly defined.' [Citation.] . . . [S]tatutes must be sufficiently clear to provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies.'" (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 800.)

22

amend its complaint to assert such a claim. Instead, Met News has only asserted legally defective claims alleging that the imposition of a fee and the regulation that permits the fee violate its constitutional rights to equal protection and due process clause. Accordingly, we affirm the trial court's order sustaining the demurrer without leave to amend.[10]

## DISPOSITION

The trial court's judgment is affirmed. Respondent shall recover its costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

WOODS, J.

---

[10] Met News has proffered no proposed amendment that might cure the defects to its complaint. It has therefore failed to demonstrate that sustaining the demurrer without leave to amend constituted an abuse of discretion. (See *Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 613-614 [plaintiff "bears the burden of demonstrating that . . . sustaining the demurrer without leave to amend . . . was an abuse of discretion. [Citation.] If the plaintiff does not proffer a proposed amendment, and does not advance on appeal any proposed allegations that will cure the defect or otherwise state a claim, the burden of proof has not been satisfied"].)